UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re:<br>　　WENDY L. SHAW,<br><br>　　　　　　　*Debtor* | : <br>: <br>: <br>: <br>: | Case No.: 18-20096 (AMN)<br>Chapter 7 |
| WENDY L. SHAW,<br>　　　　　　　*Movant*<br>v.<br>SHEILA M. KIRKWOOD, SUNTRUST MORTGAGE, INC., LINDA TRUDEL, LAURA ROSENBLATT, MARK A. CAMPOCHIARO, and UNITED STATES OF AMERICA,<br>　　　　　　　*Respondents* | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | <br><br><br><br><br><br><br><br>Re: ECF No. 44 |
| SHEILA M. KIRKWOOD,<br>　　　　　*Objecting Party*<br>v.<br>WENDY L. SHAW,<br>　　　　　　　*Respondent*<br><br>KARA S. RESCIA,<br>　　　　*Chapter 7 Trustee* | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | <br><br><br><br><br><br><br>Re: ECF Nos. 129, 131 |

**MEMORANDUM OF DECISION AND ORDER OVERRULING
OBJECTION TO EXEMPTION AND GRANTING MOTION TO AVOID JUDICIAL LIEN**

*Wendy L. Shaw*
*Movant/Respondent*

*Represented by*
Robert A. Cushman, Esq.
Law Offices of Robert A. Cushman LLC
21 New Britain Avenue, Suite 218
Rocky Hill, CT 06067


*Sheila M. Kirkwood*
*Objecting Party/Respondent*

*Represented by*
George Purtill, Esq.
George M. Purtill
Purtill & Pfeffer, P.C.
19 Water Street
P.O. Box 50
South Glastonbury, CT 06073

1

*SunTrust Mortgage, Inc.*  *Non-Appearing Respondents*
*Linda Trudel*
*Laura Rosenblatt*
*Mark A. Campochiaro*
*United States of America*

This case presents a contest over a debtor's assertion of a state homestead exemption and the meaning of 11 U.S.C. § 522(o).[1] The Chapter 7 debtor Wendy L. Shaw ("Debtor") seeks to avoid a judicial lien she claims impairs her state law-based homestead exemption pursuant to 11 U.S.C. § 522(f). The creditor Sheila M. Kirkwood ("Creditor") seeks to defeat the homestead exemption, alleging the Debtor engaged in improper bankruptcy planning and pre-petition transfers of real property that should reduce or eliminate the debtor's exemption allowance, pursuant to Bankruptcy Code § 522(o).

## I.    JURISDICTION AND VENUE

The United States District Court for the District of Connecticut has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984. Pursuant to 28 U.S.C. § 157(b)(2)(B), this is a core proceeding. This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

---

[1] Unless otherwise specified, statutory references are to the Bankruptcy Code, found at Title 11, United States Code.

## II. RELEVANT PROCEDURAL HISTORY

On January 24, 2018 ("Petition Date"), the Debtor commenced this case by filing a voluntary Chapter 13 bankruptcy petition. ECF No. 1. In June 2018, the Debtor elected to convert the Chapter 13 case to a case under Chapter 7, and, on September 5, 2018, the Debtor received a Chapter 7 bankruptcy discharge. *See,* ECF Nos. 73, 98.

Shortly after filing the petition, the Debtor filed three bankruptcy schedules relevant to the present dispute, including Schedules A/B, Schedule C and Schedule D, reflecting certain assets and liabilities as of the Petition Date. On bankruptcy Schedule A/B (Property), the Debtor disclosed an undivided one-half interest in 36 Shuttlemeadow Road, Plainville, Connecticut 06062 (the "Property") having a fair market value of $337,500.00, owned jointly by the Debtor and the Debtor's mother Janice Shaw ("Debtor's Mother"). ECF No. 14, P. 1. The Debtor later amended Schedule A/B and disclosed the Property was worth $240,000.00, rather than $337,500.00. ECF No. 68, p.1. On bankruptcy Schedule C (The Property You Claim as Exempt), the Debtor claimed a Seventy-Five Thousand Dollar ($75,000.00) exemption in her interest in the Property pursuant to Conn. Gen. Stat. § 52-352b(t). ECF No. 14, P. 10. On bankruptcy Schedule D (Creditors Who Have Claims Secured by Property), the Debtor disclosed the Creditor held a disputed claim against the Property based on a judgment lien related to a debt incurred in or about 2008. ECF No. 14, p. 14.

On March 20, 2018, the Creditor timely objected to the Debtor's homestead exemption (the "Objection to Exemption") arguing the exemption should be disallowed because the Debtor made a pre-Petition Date transfer of the Property with the intent to convert a non-exempt asset to an exempt asset to hinder, delay or defraud her creditors.

3

ECF No. 23; *see,* Fed.R.Bankr.P. 4003(b)(1), 11 U.S.C. § 522(o). The Debtor defended the homestead exemption arguing the Creditor failed to meet her burden to show the exemption was not properly claimed and asserting the Property was, and had been, her primary residence since March 2014. ECF No. 29.

The Creditor also filed a proof of claim asserting a secured claim of $134,800.48 premised on a judgment lien recorded in the Plainville, Connecticut land records against the Debtor's interest in the Property recorded on August 29, 2016, in Volume 592, Page 410 (the "Lien"). Proof of Claim 8-1 ("POC 8"). Attached to POC 8 was a copy of the Lien.[2] POC 8, Part 2. While the Debtor did not object to POC 8, she did file a motion to avoid the Creditor's Lien because it impaired her homestead exemption, pursuant to 11 U.S.C. § 522(f) (the "522 Motion").[3] ECF No. 44. In her 522 Motion, the Debtor asserted that on the Petition Date the Property had a fair market value of $240,000.00, and, was subject to a mortgage with a balance of $245,242.97. ECF No. 44. The Creditor objected, initially contesting the fair market value of the Property and incorporating the arguments set forth in her Objection to Exemption. ECF No. 64. Eventually, the Creditor abandoned her dispute of the fair market value of the Property and for purposes of this Memorandum of Decision that issue as well as the outstanding balance on the mortgage on the Petition Date (approximately $245,000.00) is uncontested. *See*, ECF No. 139, 00:02:36 - 00:04:50, [4] ECF No. 110, 00:11:44-00:12:24.

---

[2]     *See also*, Superior Court of Connecticut case number HHD-CV-16-6065673-S, publicly available at *https://www.jud.ct.gov/jud2.htm*.

[3]     The 522 Motion also seeks to avoid: 1) a judgment lien in favor of Linda Trudel recorded on January 4, 2017 with a balance due of $50,000.00 as of the Petition Date; 2) a judgment lien in favor of Laura Rosenblatt recorded on February 13, 2017 with a balance due of $10,000.00 on the Petition Date; and, 3) a judgment lien in favor of Mark A. Campochiaro recorded on May 12, 2017 with a balance due on the Petition Date of $1.00. ECF No. 44.

[4]     Audio records of hearings appearing as PDF entries on the docket are referenced using the following format: hours:minutes:seconds.

On May 25, 2018, the court issued a Scheduling Order directing the filing of a joint stipulation of undisputed facts, and statements of material facts as contemplated by D.Conn.L.Civ.R. 56(a)(1) and 56(a)(2).  ECF No. 60.

Thereafter, on June 6, 2018, the Debtor moved to convert her case from Chapter 13 to Chapter 7, and the case was converted.  ECF No. 67.  Kara S. Rescia was appointed as the Chapter 7 Trustee.  The Chapter 7 Trustee has not taken a position as to either the 522 Motion or the Objection to Exemption, but filed a Report of No Distribution, indicating she has administered all assets of the bankruptcy estate.  ECF No. 106.

In June 2018, the Debtor and the Creditor filed their respective Local Rule 56(a) statements.  ECF Nos. 79, 82.  A joint stipulation of undisputed facts was not filed.  On July 17, 2018, the Creditor filed a copy of the transcript of Debtor's testimony during the § 341 meeting of creditors in further support of her Objection.  ECF No. 85.

While the parties did not file a joint stipulation of undisputed facts, along the way they agreed to certain portions of the record.  Following a further status conference on July 18, 2018, the parties submitted five documents recorded on the land records of Plainville, Connecticut that the parties agreed the Court could deem admissible in considering the 522 Motion and the Objection to Exemption.  ECF No. 94.

Prior to the Creditor's commencement of litigation against the Debtor, the following documents were recorded on the local land records regarding the Property:

1) A Warranty Deed from an unrelated third party to Debtor's Mother dated March 28, 2014 and recorded in Volume 567 at Page 786;

2) An Open-End Mortgage Deed from Debtor's Mother to Mortgage Electronic Registration Systems, Inc. dated March 28, 2014 and recorded in Volume 567 at Page 789; and,

3) A "Statutory Quit-Claim Deed Survivorship Special" from Debtor's Mother to the Debtor and Debtor's Mother dated April 7, 2015 and recorded April 9, 2015 in Volume 577 at Page 607.

After the Creditor commenced litigation against the Debtor in late 2015, the following additional documents were recorded on the local land records regarding the Property:

1) A Quit Claim Deed from the Debtor to Debtor's Mother dated February 25, 2016 and recorded February 29, 2016 in Volume 586 at Page 1119;

2) A judgment lien against the Debtor's interest in the Property in favor of the Creditor recorded on August 29, 2016 in Volume 592, Page 410 (the "Lien"); and,

3) A "Correcting Quit Claim Deed" from Debtor's Mother to the Debtor and Debtor's Mother, jointly, dated September 13, 2016 and recorded September 28, 2016 in Volume 593 at Page 406.

Sixteen (16) months after the title to the Property was restored to the Debtor through the "Correcting Quit Claim Deed," the Debtor filed the bankruptcy case. Nothing in the record suggests the Creditor had undertaken any enforcement of the Lien prior to the Petition Date.

The parties filed additional memoranda of law in support of their respective positions. *See* ECF Nos. 100, 102, and 104. Review of additional matters of record led to a muddled procedural posture that included written and oral argument, a transcript of the Debtor's testimony at a § 341 Meeting of Creditors filed by the Creditor, other documents filed by the Creditor submitted with ECF No. 100, the parties' assertion they were prepared to rely on the evidentiary record as one ready for summary judgment, and the Creditor's subsequent statement that she required further discovery. In response, the court established a schedule which culminated in an evidentiary hearing.

6

Relatedly, the Debtor filed a motion *in limine* seeking an order excluding evidence, including testimony, relating to the motivation of transfers of the Property, and, prohibiting the Creditor from calling the Debtor's counsel as a witness. The parties eventually agreed the testimony of the Debtor during the creditors' meeting would be part of the record here, no other testimony was offered, and, the Debtor's counsel was not called as a witness. Therefore, the motion is now moot and ECF No. 129 will be denied.

### III.    UNDISPUTED FACTS

Based on the largely undisputed record here, I make the following findings of fact. On March 28, 2014, Janice A. Shaw ("Debtor's Mother") purchased the Property from an unrelated third party and received title by way of a Warranty Deed recorded in the Land Records, subject to a mortgage in the original principal amount of $262,500.00 (the "Purchase Money Mortgage"). ECF No. 94, Exhibits 1, 2. Approximately one year later, in April 2015, the Debtor's Mother executed and recorded a quit-claim deed to the Debtor and herself, as joint tenants with rights of survivorship. ECF No. 94, Exhibit 3.

On December 10, 2015, the Creditor made a written demand for payment of a debt to the Debtor. Shortly after the demand, on January 28, 2016, the Creditor served the Debtor with a civil summons and complaint returnable to the state court. ECF No. 82, ¶¶ 5, 7. On February 25, 2016, the Debtor executed and recorded a quit-claim deed transferring her interest in the Property to the Debtor's Mother for no consideration. ECF No. 82, ¶¶ 9, 10; ECF No. 94, Exhibit 4. The Debtor continued to occupy the Property as her residence after that date and through the Petition Date. ECF No. 82, ¶ 12. The record is silent as to the value of the Property, the outstanding balance on the Purchase Money

Mortgage, or, the value of any equity the Debtor may have had in the Property at the time of the February 2016 transfer.

Approximately six months later, on August 18, 2016, the state Superior Court entered a judgment against the Debtor and in favor of the Creditor in the amount of $134,800.48, plus post-judgment interest at a rate of ten (10%) percent *per annum*. POC 8-1, Part 4. On August 29, 2016, the Creditor recorded her Lien in the Plainville, Connecticut land records, naming the Debtor as the judgment debtor and identifying the Property with a metes and bounds description. POC 8-1, part 2.

Approximately two weeks after the Judgment Lien Certificate was filed – on September 13, 2016 – the Debtor's Mother executed and recoded a "Correcting Quit Claim Deed" on the land records that transferred title to the Debtor's Mother and the Debtor, jointly, with rights of survivorship. *See,* ECF No. 82, ¶¶ 14, 17; ECF No. 94, Exhibit 5. The Property remained subject to the Debtor's Mother's Purchase Money Mortgage, and as before, there is no evidence in the record from which to determine the value of any equity in the Property at the time of this transfer.

In January 2018, approximately sixteen (16) months later, the Debtor commenced this case. On the Petition Date the Debtor disclosed "ZERO" in non-exempt assets, $807,255.10 in total liabilities, and, ownership of an interest in the Property subject to the Debtor's Mother's Purchase Money Mortgage. ECF No. 82, ¶ 2. At that time, the Debtor occupied the Property as her residence, the value of the Property was $240,000.00, and, the outstanding balance on the Purchase Money Mortgage was approximately $245,000.00. ECF No. 68, p.1; ECF No. 139, 00:02:36 - 00:04:50.

## IV.  APPLICABLE LAW AND BURDEN OF PROOF

### a. Applicable Law

The purpose of the bankruptcy process is to permit an "honest but unfortunate debtor" to "reorder [her] affairs, make peace with [her] creditors, [and] enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). "[E]xemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'" *Schwab v. Reilly*, 560 U.S. 770, 791 (2010).

Underlying both the Objection to Exemption and the 522 Motion is the exemption scheme set forth in § 522 of the Bankruptcy Code. As relevant here, § 522 provides as follows:

> § 522
> (b)(1)  . . .[A]n individual debtor may exempt from property of the estate the property listed in paragraph (3) of this subsection.
> . . .
> > (3)  Property listed in this paragraph is—
> > > (A)  subject to subsections (o) and (p), any property that is exempt under State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located . . .
>
> (c)  Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case,
>
> (f)(1)  Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A)  a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
> > . . .
> > (2)

      (A)    For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

          (i)    the lien;
          (ii)   all other liens on the property; and
          (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

. . .

(l)    The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt.

(o)   For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

    (1)    real or personal property that the debtor or a dependent of the debtor uses as a residence;
          . . .
    (4)    real or personal property that the debtor or a dependent of the debtor claims as a homestead;

shall be reduced *to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt*, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(b),(c), (f), (o)(*emphasis added*).

        In essence, § 522(c)(1) of the Bankruptcy Code permits a debtor to exempt the value of a residence in her bankruptcy case if the relevant state law permits it, subject to the provisions of § 522(o). Section 522(f) permits a debtor to avoid a judicial lien recorded "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(o).

10

The United States Bankruptcy Appellate Panel for the Tenth Circuit explained the background of § 522(o), noting it was "intended to strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions ... and to make clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors." *Soulé v. Willcut (In re Willcut)*, 472 B.R. 88, 94 (10th Cir. BAP 2012). After the 2005 amendments to the Bankruptcy Code, "[s]ection 522 continue[d] to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property." *Id.* Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in 2005 was an attempt by Congress to address a perceived "mansion loophole" and to limit the value of homestead exemptions when there is fraud. *Id.* This lends support to the idea the statute was enacted to prevent a fraudulent attempt to build up exempt equity in a homestead. *Id.*

Under Conn.Gen.Stat. § 52-352b(t) – the applicable state exemption law relied upon by the Debtor – the "homestead of the exemptioner to the value of seventy-five thousand dollars"[5] is exempt from claims of creditors "provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it." Conn.Gen.Stat. § 52-352b(t). There is no requirement that a homeowner have owned a residential property for a particular period of time before she may enjoy the benefit of the homestead exemption.

Bankruptcy Code § 522(o) applies only when the debtor seeks to exempt an "interest in homestead property under section 522(b)(3)(A) (formerly section 522(b)(2)(A))

---

[5] While not relevant here, the state law provides that an additional $50,000.00 would be exempt if the judicial lien relates to certain medical types of medical costs.

11

by claiming exemptions under state law or local law."  4 *Collier on Bankruptcy* ¶ 522.08 (16th 2019).  A debtor's assertion of an exemption may be challenged by a creditor if, as here, a timely objection is filed.  Pursuant to Fed.R.Bankr.P. 4003(b), an objection to a debtor's claim of exemption must be filed "within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Fed.R.Bankr.P. 4003(b)(1).

A party objecting to an exemption pursuant to § 522(o) must establish four elements by a preponderance of the evidence: (1) the debtor disposed of the property during the ten (10) years preceding the petition date; (2) the property was not exempt; (3) some of the proceeds from the sale of the property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the property with the intent to hinder, delay, or defraud a creditor.  *Danussi v. Kaska*, 424 B.R. 616, 619–20 (N.D.N.Y. 2010); *In re: Corbett,* 478 B.R. 62, 69 (Bankr. D.Mass. 2012).  "The phrase 'intent to hinder, delay or defraud a creditor' is similar to the language employed by Congress in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2) and requires actual, as opposed to constructive, fraud."  *In re Corbett*, 478 B.R. at 69 (*citing*, *In re Sissom*, 366 B.R. 677, 691–92 (Bankr.S.D.Tex. 2007)).  "[T]he phrase 'the value of an interest in ... real [ ] property ... shall be reduced' in 11 U.S.C. § 522(o) means that the equity in a debtor's home that was obtained through fraudulent transfer of non-exempt assets into exempt assets is to be reduced. If there is no equity, there is no value subject to reduction."  *In re Willcut*, 472 B.R. at 97.

Prior to the 2005 amendments to the Bankruptcy Code, several circuit courts held that "the conversion of non-exempt to exempt property for the purpose of placing the

12

property out of the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled." *In re Corbett*, 478 B.R. at 70 (*citing Marine Midland Business Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1076 (10th Cir.1991) (*in turn citing, inter alia, Norwest Bank Neb., N.A. v. Tveten*, 848 F.2d 871, 873–74 (8th Cir.1988); *Ford v. Poston*, 773 F.2d 52, 54 (4th Cir.1985)). *See also NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer)*, 932 F.2d 1100, 1102 (5th Cir.1991);. The enactment of § 522(o) did not change this long-standing policy. *See In re Agnew,* 355 B.R. 276, 283 (Bankr.D.Kan.2006)("[t]here is nothing in the limited legislative history of BAPCPA to suggest that Congress intended to change the longstanding policy of permitting intentional but nonfraudulent conversion of nonexempt property to exempt property on the eve of filing.").

Generally, if a trustee or creditor challenges a pre-bankruptcy transfer of property by a debtor and the property transferred had no equity at the time of the transfer, the transfer will not be avoided. *See, In re Willcut*, 472 B.R. at 97; *In re: Barbara Milazzo*, 450 BR 363, 374 n.12 (Bankr. D. Conn. 2011)(The debtor's equity in the residence, at the time of the transfers, was less than $75,000 and was thus exempted under Connecticut's homestead exemption. Conn. Gen. Stat. § 52–352b(t). Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52–552a, et seq., is not applicable to a debtor's transfer of property that was exempt under state law.); *In re Jones*, 403 B.R. 228 (Bankr. D. Conn. 2009)(Absent showing by trustee that, at time of transfer, property had value in excess of the sum of encumbrances against it and the $75,000 homestead exemption to which debtor was entitled, court could not find that any nonexempt equity had been transferred, as required for avoidance of transfer).

13

Regarding judgment liens and attachment, a judgment lien may be recorded in the town clerk's office in the town where a judgment debtor's real property lies that includes, among other things, "a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property."  Conn.Gen.Stat. § 52-380a.  However, a foreclosing lien creditor can reach no greater interest in real property than that held by its debtor.  *Connecticut Foreclosures*, 5th Edition, Section 16-7, p. 900; *see also, NC Two, L.P. v. Suppa*, Docket No. NNH-CV07-5016069-S, 2008 WL 2374687, at *5, 2008 Conn. Super. LEXIS 1327, at *11–12 (Conn. Super. May 20, 2008)("The plaintiff creditor obtains a lien upon such interest in the property as the debtor had at the time of the lien.").  In other words, if a judgment debtor does not have title to real property at the time its creditor records a judgment lien on the land records, the lien is invalid.  *Id.*

### b. Burden of Proof

A debtor's claim of an exemption is presumptively valid.  11 U.S.C. § 522(l); Fed.R.Bankr.P. 4003(c); *see also*, 9 *Collier on Bankruptcy* ¶ 4003.04 (16th ed.).  A creditor objecting to an exemption bears the burden of proof to establish by a preponderance of the evidence that the Debtor was not entitled to assert an exemption in the Property.  Fed.R.Bankr.P. 4003(c); *In re Ward*, 595 B.R. 127, 135 (Bankr. E.D.N.Y. 2018).  This burden applies to each element of a creditor's objection to the exemption.  Here, the burden to establish each element of § 522(o) rests with the Creditor who objects.[6]

---

[6] Fed.R.Bankr.P. 4003(b) "prescribes no particular form for objections to exemption claims." *In re Brown*, 614 B.R. 416, 424 (B.A.P. 1st Cir. 2020) (*quoting Spenler v. Siegel (In re Spenler)*, 212 B.R. 625, 629 (9th Cir. BAP 1997)).

As to the Debtor's 522 Motion, "[t]he party seeking to avoid a lien under § 522(f) bears the burden of proof by a preponderance of evidence on every statutory element." *In re Gucciardo*, 576 B.R. 297, 300 (Bankr. E.D.N.Y. 2017).

## V.   DISCUSSION

### A. The Creditor's Objection to the Debtor's Exemption Pursuant to 11 U.S.C. § 522(o)

After careful consideration of the record here, I conclude the Creditor failed to carry her burden of proof. To prevail in her objection premised on § 522(o), the Creditor was required to establish four elements by a preponderance of the evidence.[7] First, the Creditor needed to demonstrate that the Debtor disposed of property during the ten (10) years preceding the Petition Date, and, she pointed to the Debtor's transfer of her interest in the Property to the Debtor's Mother in February 2016. However, there is nothing in the record here establishing the value of the Property or the outstanding balance on the Purchase Money Mortgage in 2016. Accordingly, the Creditor established only that something having an unknown value – and possibly no value – was transferred by the Debtor within the relevant time period. Because it was the Creditor's burden to establish the value of the property transferred, I cannot find that this first element of the § 522(o) analysis was established.

Second, the Creditor was required to establish the Debtor transferred property that was not exempt property. As to this second factor, I conclude the Creditor failed to meet her burden. The Debtor "could claim" an exemption of $75,000.00 in the Property at the

---

[7] While the Creditor relied on three cases decided before the addition of § 522(o) to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, here the framework of § 522(o) applies. *See cases cited by the Creditor, In re Robinson*, 271 B.R. 437 (Bankr. N.D.N.Y. 2001); *In re Cruickshank*, 63 B.R. 727 (Bankr. W.D.N.Y. 1986); and *In re Schwarb*, 150 B.R. 470 (Bankr. M.D. Fla. 1992).

15

time of February 2016 transfer pursuant to Conn.Gen.Stat. § 52-352b(t) because the Debtor resided in the Property. In the absence of any evidence establishing the value of the Property and the Purchase Money Mortgage at the time of the 2016 transfer, the Creditor failed to prove any non-exempt property was transferred. To draw the conclusion that the Debtor's transfer in February 2016 was of non- exempt property, evidence of the value of the Property and the outstanding balance on the Purchase Money Mortgage as of the date of the transfer is required. None was provided and this second element is not satisfied.

Third, the Creditor needed to establish that some of the proceeds from the sale or transfer of the property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead. This element seeks to address the concept that a debtor transferred non-exempt property in order to turn it into exempt property. Under the facts here, however, there is no evidence the Debtor received any proceeds from the February 2016 transfer. The Debtor did not purchase a new homestead, improve a homestead or reduce the debt associated with an existing homestead. Based on the record here, I conclude the Creditor failed to establish the Debtor's transfer in February 2016 created exempt property from non-exempt property.

To address a thread that runs through the argument of the Creditor, I also conclude the September 2016 transfer by the Debtor's Mother back into the Debtor's name did not satisfy this element of § 522(o) because it was not a transfer by the Debtor. Importantly, there is no evidence of value for the Property at that time, nor any evidence of the outstanding balance on the Purchase Money Mortgage at that time, from which to draw

any conclusion as to the value of the Property or the Debtor's equity (if any) in it. Even if I were to credit the argument that the Debtor's Mother was acting as custodian of a constructive trust for the Debtor (which I do not),[8] without evidence of value the Creditor failed to establish that non-exempt property of the Debtor was turned into exempt property by the transfer.

As to the fourth element – whether the Debtor transferred any non-exempt interest in property with the intent to hinder, delay, or defraud a creditor – the Creditor pointed to the Debtor's testimony at the § 341 creditors meeting, and asserted arguments akin to badges of fraud arguments under a fraudulent transfer analysis. The Creditor largely relied on the Debtor's testimony during the creditors meeting that, (1) the Debtor "never paid for a thing; it's [Debtor's Mother's] house"; (2) that "[Debtor's Mother] [paid] the taxes and the insurance"; and, (3) at the time the Debtor's Mother executed the Correcting Quit Claim Deed prepared by the Debtor's attorney in this case, the Debtor had already contacted an attorney with regard to bankruptcy advice. ECF No. 100, ¶ 23.

This testimony is insufficient to establish badges of fraud, and instead, established what the parties have agreed is the record here. The Debtor did not pay for the acquisition or maintenance of the Property though she resided there on the Petition Date. And, the transfer in September 2016 from the Debtor's Mother back to the Debtor was done in contemplation of a bankruptcy filing.

Moreover, the Creditor's argument as to the fourth element failed to explain how the transfer made in contemplation of bankruptcy *into* the Debtor's name had the effect

---

[8] While the Creditor mentioned a constructive trust theory in the original objection, no further argument or record was submitted regarding this legal theory, and it was abandoned. ECF No. 23, pp. 2, 5.

of hindering, delaying or defrauding her. The record is silent as to any steps the Creditor took to enforce the Lien or collect the underlying debt prior to the Petition Date, suggesting the Creditor was not hindered or delayed. And, mere planning for a bankruptcy is not equivalent to fraud. Here, the Creditor failed to establish anything of value was transferred out of her reach. And, as the Creditor admits, there is no evidence from which the court could conclude the Property was worth more than the balance owed on the Purchase Money Mortgage at any point in time.

Because the Creditor failed to carry her burden to establish the four elements of her objection to an exemption pursuant to § 522(o), the objection must be overruled.

B. **The 522 Motion Will Be Granted**

Because I conclude the Debtor is entitled to assert a homestead exemption of $75,000 under state law regarding her interest in the Property, and, because the value of the Property on the Petition Date was less than the total of the outstanding balance on the Purchase Money Mortgage, the Debtor's exemption and the Creditor's Lien, the 522 Motion will be granted. Applying § 522(f)(2)(A), the Lien is avoidable.

I note that no challenge to the validity or enforceability of the Lien was advanced by the Debtor on the basis that the Debtor did not own an interest in the Property at the time the Lien was recorded. The Lien was recorded in August 2016, at a time when the Debtor did not hold title to any portion of the Property. The Creditor provides no support for the proposition that her Lien ever attached to the Property. It is possible the Debtor need not avoid a lien that is invalid under applicable state law since it does not impair her exemption. In *NC Two, L.P. v. Suppa*, the state court dismissed a foreclosure action having determined it lacked subject matter jurisdiction to hear a complaint from a

18

judgment lien creditor who recorded a lien against property not owned by its judgment lien debtor. *NC Two, L.P. v. Suppa,* 2008 WL 2374687, at *5. Here, the Creditor arguably has no standing to oppose the 522 Motion as if it had an enforceable lien against the Property. To avoid any doubt about whether the Lien is enforceable against the Property, the 522 Motion will be granted.

### VI. CONCLUSION

For the foregoing reasons, the Creditor's Objection to Exemption will be overruled and the Debtor's 522 Motion will be granted. This is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period. *See*, Fed.R.Bankr.P. 8001, *et seq.*, Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (2020).

Accordingly, it is hereby

**ORDERED**: That, the Creditor's objection to the Debtor's exemption pursuant to 11 U.S.C. § 522(o) or any other basis (ECF No. 131) is hereby OVERRULED; and it is further

**ORDERED**: That, the Debtor's motion to avoid the lien of the Creditor pursuant to 11 U.S.C. § 522(f) is GRANTED, and a separate Order granting ECF No. 44 shall enter; and it is further

**ORDERED:** That, the Debtor's Motion *In Limine*, ECF No. 129, is DENIED as moot.

Dated this 12th day of November, 2020, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut